UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

R.S., an infant by his Mother and Natural                     24-cv-4299 (DG)(LKE)
Guardian, SHAQUEEMA MCKINES, and
SHAQUEEMA MCKINES, Individually,                              **AMENDED COMPLAINT**

                                    Plaintiffs,               **JURY DEMAND**

            -against-

THE CITY OF NEW YORK, DETECTIVE DANIEL
ZHANG (TAX #951465) AND JOHN DOES
(the name John Does being fictitious as the true names
are presently unknown),

                                    Defendants.
------------------------------------------------------------x

       Plaintiffs, by their attorneys, Law Office of Philip Akakwam, P.C., complaining of the

defendants, The City of New York, Detective Daniel Zhang and John Does, upon information

and belief alleges as follows:

## <u>INTRODUCTION</u>

       1.     This is an action at law to redress the deprivation under color of statute,

ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the

plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United

States, and by Title 42 U.S.C. § 1983 [and § 1985], and arising under the laws and statutes of the

City and State of New York.

       2.     This case arises out of an incident which commenced on April 7, 2023 at or about

2:45 PM on a public sidewalk on Beach 17th Street, Far Rockaway, New York and which

continued thereafter and elsewhere.

3.      Plaintiffs seek monetary damages for the false arrest, false imprisonment and use of excessive and unnecessary force against infant plaintiff by defendants, and otherwise, for the violation of infant Plaintiff's federally guaranteed constitutional and civil rights. Plaintiffs seek whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that their remedy is full and complete.

## JURISDICTION

4.      The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

5.      Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

6.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## THE PARTIES

7.      Plaintiffs are, and were at all times material herein, residents of the City of New York, County of Queens, and State of New York.

8.      Infant plaintiff, R.S., was at all times material herein, a 12-year-old black male.

9.      Defendant The City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

10. The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

11. Defendant Detective Daniel Zhang, was at all times material herein a detective or police officer employed by the NYPD. He is named here in his official and individual capacities.

12. Defendants John Does were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

13. Defendants Zhang and John Does are collectively referred to herein as "defendant officers".

## NOTICE OF CLAIM

14. All conditions precedent to filing of this action have been complied with; plaintiffs filed timely notice of claim against the City, in compliance with General Municipal Law § 50. The said Notice of Claim was assigned claim number 2023PI021313.

15. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

16. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## STATEMENT OF FACTS

17. On or about April 7, 2023, at approximately 2:45 pm, infant plaintiff R.S. was lawfully walking home with two of his friends, on the public sidewalk on Beach 17th Street, Far Rockaway, Queens County, New York.

18. As infant plaintiff and his friends were walking on the public street as aforesaid and chatting amongst themselves, they were confronted by a Jewish adult male who asked them why they were in the area.

19. The said Jewish man was also walking on the same sidewalk as infant plaintiff and his friends but in opposite direction.

20. And as the Jewish man got near infant plaintiff and his friends, the Jewish man turned around and charged at infant plaintiff and his friends and asked them who they were talking to.

21. One of infant plaintiff's friends told the Jewish man that they were not talking to him but were chatting amongst themselves.

22. The Jewish man called infant plaintiff and his friends "low-lives" and asked whether they had nothing to do with their lives.

23. Further, the Jewish man asked infant plaintiff and his friends "why are you over here, don't you have enough weed to smoke?"

24. Then the Jewish man said to infant plaintiff and his friends that he" hangs people like them".

25. Infant plaintiff and his friends kept walking away from the Jewish man who continued to follow them.

26. Then the man made a call on his phone and subsequently, infant plaintiff and his friends were being followed by two more Jewish adult males.

27. Infant plaintiff and his friends became afraid for their safety and began running away from the men who were following them.

28. Infant plaintiff and his friends did not have any physical contact with the Jewish man and did not throw any rocks at him or any other person.

29.     Infant plaintiff ran away from the threat of physical harm from the Jewish man and the other two men he had called to follow infant plaintiff and his friends.

30.     Later plaintiffs heard and saw on the news that the infant plaintiff was wanted for allegedly assaulting a Jewish man by throwing rocks at him and using antisemitic words.

31.     The news broadcast had a video of infant plaintiff and two other kids walking on the street.

32.     The video did not show infant plaintiff and his friends committing any offense for which they could be declared wanted or arrested.

33.     Nonetheless, the police who caused the video and the news to be published stated that infant plaintiff and his friends were wanted for hate crime and that they should turn themselves in.

34.     The police even put out a reward of $3,500 for information leading to the arrest of infant plaintiff.

35.     The video and the image of infant plaintiff were widely circulated on Instagram's Five Town Central, CBS News, Channels 7 and 11 news, Waves and various Jewish news outlets and publications.

36.     The video did not show any crime being committed by infant plaintiff or his friends but stated that the police were looking for them on suspicion of committing a hate crime.

37.     The police further claimed that infant plaintiff and his friends had committed the alleged crimes in two different locations and that one of the people wanted for the alleged assault was a female.

38.     Infant plaintiff and his friends were not with any female when they were confronted by the Jewish man, and they were not with any female throughout the duration of the incident.

39.     Following the widely circulated video and news, many family members and friends of the plaintiffs called plaintiffs to advise that they had seen the infant plaintiff on the news and in the papers alleging commission of hate crime, and expressed concern for the safety of infant plaintiff.

40.     The police called infant plaintiff's school and told his Guardian Counselor, Ms. Lax, who is also Jewish, that they were going to arrest infant plaintiff at his school.

41.     When infant plaintiff went to school a few days after the incident, Ms. Lax called him out of his class and questioned him about the incident and told him that she had given the police his home address and that the police would be coming to the school the following day to lock him up.

42.     Ms. Lax obtained statement from infant plaintiff without consent of his parents and without notifying them.

43.     Ms. Lax did not even notify the school principal about the incident or the fact that she had spoken to infant plaintiff.

44.     Infant plaintiff informed his mother about what Ms. Lax had said and done. He also notified one of his teachers, Ms. Blacket, who then brought the matter to the attention of the Principal.

45.     The principal admonished Ms. Lax and asked her to give her the statement she had taken from the infant plaintiff.

46.     Because of the video of infant plaintiff out there with a reward for information leading to his arrest, and the threat by the police to arrest him at home or at school, infant plaintiff was taken by his mother to the 101 Police Precinct on April 11, 2023.

47.     At the precinct, infant plaintiff was arrested and placed in handcuffs.

48.     One detective Zhang interrogated infant plaintiff about the incident, showed him a video and asked if he was on the video and infant plaintiff answered yes that he was one of the kids on the video.

49.     Then Detective Zhang asked infant plaintiff whether he threw rocks at any Jewish man, and infant plaintiff told him that he did not throw rocks at any Jewish man or any other person.

50.     Infant plaintiff told the detective that it was the Jewish man who was harassing them while they were walking on the public sidewalk.

51.     When infant plaintiff wanted to tell the detective about the hateful words the Jewish man had used on them, the detective did not want to hear any of it.

52.     Plaintiff McKines asked the detective what evidence they had against her twelve (12) years old son to justify putting out his image in a widely circulated video on the news and endangering the infant.

53.     The detective showed plaintiff McKines the same video on the news which did not disclose any crime being committed.

54.     Infant plaintiff was arrested and taken upstairs away from his mother where he was cuffed to a chair.

55.     The cuffs were so tight on infant plaintiff's hands that it caused bruises to his hands.

56.     The police ignored complaints of the infant plaintiff that the cuffs were too tight on his hands.

57.     Plaintiff McKines was made to leave the precinct without her son.

58.     The police told Ms. McKines that they will charge infant plaintiff to the juvenile court and will let her know where he is taken to.

59.     Infant plaintiff was detained for many hours and later plaintiff McKines was called by the police to come and get her son.

60.     Thereafter, Infant plaintiff was released to his mother McKines and no charges were brought against him.

61.     Although no charges were brought against infant plaintiff, the video with his image remained out there claiming that he was wanted for assault and a hate crime.

62.     The safety and well-being of infant plaintiff is still being threatened by the conduct of the  police in falsely circulating to the media that infant claimant had committed a hate crime.

63.     As a consequence of the actions and conduct of the City of New York and its agents and employees, infant plaintiff R.S. suffered serious emotional distress, psychological trauma, and mental distress.

64.     Infant plaintiff R.S. was falsely arrested, subjected to malicious abuse of criminal process, assaulted, battered, subjected to excessive and unnecessary force.

65.     There was absolutely no probable cause for the arrest of infant plaintiff and for the endangerment of his safety and well being by the widespread malicious publication of his image as a person wanted for a hate-crime.

66.     Infant plaintiff was subjected to defamation, humiliation, and embarrassment because of the actions, conduct and policies and practices described herein.

67.     Plaintiffs were placed in serious fear because of the actions, conduct and policies and practices described herein.

68.     Infant plaintiff suffered physical injuries, including injury to his wrists. Moreover, plaintiff suffered emotional distress and mental anguish and psychological trauma as a consequence of the assault and battery, and as a result of his false arrest and imprisonment by defendant officers.

69.	Infant plaintiff suffered violations of his federally guaranteed constitutional and civil rights including rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

70.	The Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

71.	The Plaintiffs have no other adequate remedy at law but for this action.

**AND AS FOR A FIRST CAUSE OF ACTION:**
**42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT**

72.	Plaintiffs reiterate paragraphs 1 through 71 and incorporates such by reference herein.

73.	By their conduct and under color of law, defendant officers deprived infant plaintiff of his constitutional and civil right to be free from false arrest and false imprisonment.

74.	Consequently, infant plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

**AND AS FOR A SECOND CAUSE OF ACTION:**
**42 U.S.C. § 1983 - UNREASONABLE SEARCH AND SEIZURE**

75.	Plaintiffs reiterate paragraphs 1 through 74 and incorporates such by reference herein.

76.	Defendant officers unlawfully subjected infant plaintiff to an illegal search of his person and property.

77.	The conduct of defendant officers, as described herein, amounted to unreasonable search and seizure.

78.	Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

79.     Consequently, infant plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally

## AND AS FOR A THIRD CAUSE OF ACTION:
## 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

80.     Plaintiffs reiterate paragraphs 1 through 79 and incorporates such by reference herein.

81.     By their conduct and under color of law, defendant officers deprived plaintiff of his constitutional right to be free from excessive and unreasonable force.

82.     Consequently, infant plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A FOURTH CAUSE OF ACTION:
## 42 U.S.C. § 1983 - MALICIOUS ABUSE OF CRIMINAL PROCESS

83.     Plaintiffs reiterate paragraphs 1 through 82 and incorporates such by reference herein.

84.     The infant plaintiff was subjected to malicious abuse of the criminal process and the violation of his right to free speech under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

85.     Consequently, infant plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A FIFTH CAUSE OF ACTION
## (Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)

86.     Plaintiffs reiterate paragraphs 1 through 85 and incorporates such by reference herein.

87.     The foregoing violations of plaintiff's federal constitutional rights and resultant injuries were directly and proximately caused by conduct, chargeable to defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

88.     The defendant City, through its police department, the NYPD, has developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

89.     It was the policy and/or custom of the City to undertake inadequate and improper investigations of civilian complaints of police misconduct and to punish inadequately officers involved in complaints which were substantiated.

90.     Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some illicit activities.

91.     The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs were implemented or tolerated by policymaking officials for defendant City including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases.

92.     Defendant City failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

(a) The determination of probable cause to make an arrest;

(b) The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

(c) The circumstances under which investigative detentions may lawfully occur and the manner in which they may lawfully be executed;

(d) The very limited circumstances under which a warrantless search may be carried out.

93. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

94. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

95. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

96.    Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

97.    As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause.

98.    As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

99.    As a direct and proximate result of the City's policies and deliberate indifference, defendants violated plaintiff's constitutional rights causing plaintiff to suffer substantial damages.

## AND AS FOR A SIXTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE 1, §§ 5, 6, 8, 11 & 12

100.    Plaintiffs reiterate paragraphs 1 through 99 and incorporates such by reference herein.

101.    By arresting and detaining plaintiff without probable cause or reasonable suspicion and assaulting plaintiff, the defendant officers, deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every New Yorker by Article 1, Section 12 of the New York State Constitution.

102.    In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by Article 1, Section 12 of the New York State Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

103.    The Defendant Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD

Officers. Such acts by Defendant Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article 1, Section 12 of the New York State Constitution.

104.    Defendants, their officers, attorneys, agents, servants and employees were responsible for deprivation of Plaintiff's State Constitutional rights. Defendant City, as employer of each of the defendant officers, is responsible for their wrongdoing under the common law doctrine of *respondeat superior.*

105.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

**AND AS FOR A SEVENTH CAUSE OF ACTION:**
**PENDENT CLAIM OF ASSAULT AND BATTERY**

106.    Plaintiffs reiterate paragraphs 1 through 105 and incorporates such by reference herein.

107.    By their conduct, as set forth above, defendant officers committed acts of battery against plaintiff which included forcefully grabbing him without cause. The use of physical force against plaintiff was willful and unwarranted.

108.    By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

**AND AS FOR A EIGHT CAUSE OF ACTION:**
**PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT**

109.    Plaintiffs reiterate paragraphs 1 through 108 and incorporates such by reference herein.

110.     Plaintiff was wrongfully, unlawfully and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendant officers.

111.     At all relevant times, the defendant officers acted forcibly in apprehending plaintiff.

112.     The wrongful, unjustifiable, and unlawful arrest, detention and imprisonment of plaintiff was carried out without a warrant.

113.     All of the foregoing occurred without any fault or provocation on the part of the plaintiff.

114.     At all relevant times, the defendant officers were employees of the defendant City and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

115.     As a direct and proximate result of the false arrest and imprisonment of plaintiff as detailed above, plaintiff sustained the damage herein before stated.

## AND AS FOR A NINTH CAUSE OF ACTION:
## PENDENT CLAIM OF DEFAMATION

116.     Plaintiffs reiterate paragraphs 1 through 115 and incorporates such by reference herein.

117.     Infant plaintiff R.S. was defamed.

118.     By reason of and as a consequence of the conduct of the defendants detailed above, infant plaintiff suffered severe and serious physical and mental injuries.

## AND AS FOR A TENTH CAUSE OF ACTION:
## PENDENT CLAIM OF LOSS OF SERVICE

119.     Plaintiffs reiterate paragraphs 1 through 118 and incorporates such by reference herein.

120.  Plaintiff Shaqueema McKines is the mother and natural guardian of the infant plaintiff, and has been caused to sustain medical expenses on his behalf as well as suffering from her loss of services because of the injuries sustained by the infant plaintiff.

121.  As a direct and proximate result of the misconduct detailed above, plaintiff, Shaqueema McKines, sustained the damage herein before stated.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

i.  For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii.  For punitive damages against the individual defendants in an amount to be determined at trial;

iii.  For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv.  For pre-judgment interest as allowed by law; and

v.  For such other and further relief as the court deems just and proper.


Dated: Brooklyn, New York
        February 4, 2025

                                        */s/ Philip Akakwam*
                                        Law Office of Philip Akakwam, P.C.
                                        Attorneys for the Plaintiffs
                                        303 Livingston Street, 2nd Floor
                                        Brooklyn, N.Y. 11217
                                        (718) 858-2488

24-CV-4299 (DG) (LKE)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

=====================================================

R.S., an infant by his Mother and Natural
Guardian, SHAQUEEMA MCKINES, AND
SHAQUEEMA MCKINES, Individually,

                    Plaintiffs,

        -against-

THE CITY OF NEW YORK, DETECTIVE DANIEL
ZHANG (TAX #951465) AND JOHN DOES
(the name John Does being fictitious as the true names
are presently unknown),

                    Defendants

=====================================================

## AMENDED COMPLAINT

=====================================================

LAW OFFICE OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiffs
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

=====================================================

TO:

=====================================================

Service of a copy of the within is hereby admitted.

Dated: